292 S.E.2d 643

**STATE of West Virginia**

v.

**Bill Eugene CLARK.**

No. 14775.

Supreme Court of Appeals of West Virginia.

June 23, 1982.

Harry G. Deitzler, Pros. Atty., Parkersburg, for plaintiff-defendant in error.

M. E. Mowery, Jr., and Orville L. Hardman, Parkersburg, for defendant-plaintiff in error.

McHUGH, Justice:

Defendant, Bill Eugene Clark, appeals from a judgment of the Circuit Court of Wood County sentencing him to a term of five to eighteen years in the penitentiary upon a jury verdict finding him guilty of second degree murder.

The defendant's two principal assignments of error are that the trial court erred in permitting over objection the introduction of gruesome photographs having no essential evidentiary purpose and that the prosecutor made a statement during closing argument that amounted to an impermissible comment on his failure to testify. The defendant's other assignments of error, including the claim that the trial court should have granted a judgment of acquittal on both first and second degree murder due to the absence of evidence of malice, are without merit and do not warrant separate discussion. For the reasons that follow, we affirm.

I

The defendant and his wife were alone at their Parkersburg residence on the evening of November 28, 1978. Sometime shortly before 10:00 p. m., the defendant shot his wife in the head at close range with a .20 gauge sawed-off shotgun. She was seated in a chair and died almost instantly. The entry wound was from front to back and was approximately 1-inch above the left eyebrow at about the center of the forehead. The weapon was held in a nearly horizontal position in relationship to the floor. All, or nearly all, of the brain was ripped out of the skull by the shotgun blast. Pieces of the brain fell behind and to the left of the chair. The autopsy revealed a blood alcohol level of .26%.

At 10:09 p. m., the defendant telephoned the Parkersburg Police Department, screaming to the radio dispatcher, "I have killed my wife, I have killed my wife. We were playing with the gun. I have killed my wife." Police officers were dispatched to the scene. Upon their arrival, they found the defendant in an emotional and excited condition. The police officers testified that the defendant made spontaneous statements concerning how the shooting occurred. One officer testified that the defendant said he and his wife had been playing on the floor like a couple of kids. Two other officers testified that the defendant said he and his wife were playing like kids at the time of the shooting but they did not testify that the defendant said they were playing on the floor. The police officer who transported him to police headquarters, testified that the defendant made the spontaneous statement that he and his wife were playing on the floor like a couple of kids when the killing occurred. After reaching the headquarters, the defendant signed a written waiver of his *Miranda*

rights and told another officer how the killing occurred.

The defendant consistently claimed the shooting was an accident, but his statements concerning the shooting were not consistent, particularly in regard to his statements to the officer who interrogated him at police headquarters. In addition, several photographs of the crime scene and the victim's body were introduced in evidence and a firearms expert testified that the shotgun could not be fired unless both the hammer was cocked and the trigger pulled.

The State's theory of the case was that the defendant committed a deliberate and premeditated murder and was attempting to lie his way out of it by asserting the shooting was accidental. The prosecutor emphasized that the defendant's statement about playing on the floor when the weapon discharged was at odds with the physical facts showing she was seated in a chair. Early in the course of closing argument, the prosecutor, while reviewing the testimony of the police officer who transported the defendant to the police station, made the following remark:

> "This time he [the defendant] said they were playing on the floor, and he held her in his arms and watched her brains roll out. That is what he said to Ron Poe [the officer]. Now Ron Poe has been around long enough and is trained well enough to know to remember exactly what the defendant says. He knows from his experience in the courtroom that there is no point remembering something, unless you remember it exactly the way it was. So, he told you, ladies and gentlemen, that that is the way it was. *There is no evidence to contradict that. There is no evidence to contradict what the defendant said there in the living room so we have to take that as what he said."* (emphasis added)

## II

The defendant contends the prosecutor's remarks constitute an improper reference to his failure to testify because only he could have controverted the officer's testimony. We cannot agree.

In *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) the United States Supreme Court held that the Self-Incrimination Clause of the Fifth Amendment to the Federal Constitution, applicable to the states by virtue of the Fourteenth Amendment, forbids both comment by the prosecution on a criminal defendant's silence at trial and instructions by the court that such silence may be considered as evidence of guilt. The trial court's instructions and the prosecutor's specific references to the defendant's failure to testify in *Griffin* were made in accordance with the explicit provisions of the California Constitution, Article 1, § 13. The Court held the constitutional provision and the practice it sanctioned invalid because they penalized the exercise of the Fifth Amendment privilege by permitting a defendant's silence to be used as evidence against him.

Two years later in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court held that the question of whether a violation of the *Griffin* rule constitutes harmless error is governed by federal rather than state law, and that before such constitutional error could be held harmless the court must be able to declare its belief that it was harmless beyond a reasonable doubt. In *Chapman,* as in *Griffin,* the state's attorney made numerous references to the defendant's silence at trial and the jury was instructed that it could draw adverse inferences from the defendant's failure to testify.

Since the *Griffin* decision over fifteen years ago, the Supreme Court has seldom considered what constitutes an impermissible comment on a defendant's failure to testify at trial. The decision in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), however, does provide some guidance as to the question presented here. In that case the Court found that the prosecutor's closing comments did not violate the defendant's Fifth and Fourteenth Amendment rights where the prosecutor made repeated references to the state's evidence as "unrefuted" and "un-

contradicted". The court focused on two factual considerations in finding no constitutional violation. Defense counsel had clearly focused the jury's attention on the defendant's silence by outlining her defense in opening statement and by stating to the court and jury near the end of the case that the defendant would be the next witness. The defendant, however, was not called to testify and no evidence was offered in her defense. The Supreme Court concluded that when the situation was viewed against this background the prosecutor's closing remarks added nothing to the impression that had already been created by the defendant's attorney.

■ The general rule formulated for ascertaining whether a prosecutor's comment is an impermissible reference, direct or oblique, to the silence of the accused is whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify. *United States v. Harbin*, 601 F.2d 773 (5th Cir. 1979); *United States v. Muscarella*, 585 F.2d 242 (7th Cir. 1978); *United States v. Anderson*, 481 F.2d 685, 701 (4th Cir. 1973), *aff'd*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *United States ex rel. Leak v. Follette*, 418 F.2d 1266 (2nd Cir. 1969), *cert. denied*, 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970); *Hayes v. Oklahoma*, 617 P.2d 223 (Okl.Cr.App.1980).

Under this formula the prosecution is free to stress the strength of the government's case and to argue the evidence and reasonable inferences therefrom, and the prosecutor is not constitutionally forbidden from telling the jury the fact that the evidence on any given point in the case stands uncontradicted. A prosecutor's statement that the evidence is uncontradicted does

not "naturally and necessarily" mean the jury will take it as a comment on the defendant's failure to testify. In many instances someone other than the defendant could have contradicted the government's evidence. *See, e.g., United States v. Lipton*, 467 F.2d 1161 (2nd Cir. 1972), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973). It is only in those cases where the defendant alone could possibly contradict the government's testimony that remarks concerning lack of contradiction have been held forbidden. See, *e.g., United States ex rel. Leak v. Follette, supra*, for an excellent discussion.

Many courts, as the defendant points out, have adopted a refinement of the general rule and have held that it constitutes an improper comment on the defendant's failure to testify for a prosecuting attorney to remark that the evidence offered by the prosecution is uncontradicted where the defendant is the only person who could or would have contradicted the evidence, *e.g., Desmond v. United States*, 345 F.2d 225 (1st Cir. 1965); *United States v. Handman*, 447 F.2d 853 (7th Cir. 1971); *Annot.*, 14 A.L.R.3rd 723 (1967). We are of the opinion, however, for the reasons discussed below, that this rule, even if the Court were to follow it, cannot properly be applied in this case.

■ In West Virginia it has long been held that Article 3, § 5 of the West Virginia Constitution[1] and *W.Va.Code*, 57–3–6,[2] make it is reversible error for the prosecuting attorney to expressly comment before the jury upon the failure of the defendant to testify in his own behalf. *E.g.*, syl. pt. 1, *State v. Nuckolls*, 166 W.Va. 259, 273 S.E.2d 87 (1980); *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979); *State v. Jones*, 108 W.Va. 264, 150 S.E. 728 (1929).

1. Article 3, § 5 in pertinent part reads:
   "[N]or shall any person, in a criminal case, be compelled to be a witness against himself...."

2. *W.Va.Code*, 57–3–6 provides:
   "In any trial or examination in or before any court or officer for a felony or misdemeanor, the accused shall, with his consent (but not otherwise), be a competent witness on such trial or examination; and if he so voluntarily be-

comes a witness he shall, as to all matters relevant to the issue, be deemed to have waived his privilege of not giving evidence against himself and shall be subject to cross-examination as any other witness; but his failure to testify shall create no presumption against him, nor be the subject of any comment before the court or jury by anyone."

In syllabus point 3 of *State v. Noe,* 160 W.Va. 10, 230 S.E.2d 826 (1976), it was held that it is prejudicial error for the prosecutor in final argument to make comments amounting to a comment on the failure of the defendant to testify.

This Court has, however, allowed prosecutorial statements that did not specifically and directly refer to the defendant's failure to testify. In *State v. McClure,* 163 W.Va. 33, 253 S.E.2d 555 (1979), the Court followed *State v. Simon,* 132 W.Va. 322, 52 S.E.2d 725 (1949), quoting syllabus point 3 as follows:

> In a criminal case, where the defendant has exercised his right not to testify, statements of the prosecuting attorney, in his argument of the case before the jury, that there had been no denial of the testimony introduced by the State, without specific reference to the failure of the defendant to testify, does not come within the inhibition of *Code,* 57–3–6.

*See also, State v. Kincaid,* 104 W.Va. 396, 140 S.E. 338 (1927).

■ Turning to the instant case, we conclude that the isolated remark of the prosecutor complained of does not constitute a specific reference to defendant's failure to testify at trial falling within the inhibition of *W.Va.Code,* 57–3–6. *McClure, supra; Simon, supra.* Furthermore, no constitutional error was committed because the remark, when read in context, was not manifestly intended to be, nor was it of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.

■ This is not a case where the jury's attention was focused on defendant's failure to testify because he alone could contradict the government's evidence. The defendant's various inculpatory statements concerning the homicide were before the jury, including statements in which no reference was made to playing on the floor. It is apparent from the record that the prosecutor was merely attempting to emphasize one piece of the State's evidence— the testimony that the defendant had stated shortly after the crime was committed

that he and his wife were playing on the floor when the homicide occurred. The prosecutor was neither attempting to challenge the defendant into taking the stand nor seeking to penalize him for his failure to do so. Furthermore, defense counsel in closing argument noted that appellant had given his account of what happened on the evening in question by the statements he had given to several police officers. We find nothing in the prosecutor's remarks which could even obliquely suggest that the jury should draw an adverse inference of guilt because the defendant exercised his constitutional right to remain silent at trial. No compulsion was exerted by the State violative of the Fifth Amendment or Article 3, § 5 of the West Virginia Constitution.

Other courts have held that similar prosecutorial remarks about uncontradicted testimony merely emphasized the government's evidence and did not constitute an impermissible comment on the defendant's failure to testify. *See, e.g., United States v. McDowell,* 539 F.2d 435 (5th Cir. 1976); *United States ex rel. Good v. Rundle,* 271 F.Supp. 948 (E.D.Pa.1967); *Adams v. State,* 263 Ark. 536, 566 S.W.2d 387 (1978); *People v. Todd,* 189 Colo. 117, 538 P.2d 433 (1975); *People v. Skorusa,* 55 Ill.2d 577, 304 N.E.2d 630 (1973). *See also Annot., supra,* at § 9.

■ Moreover, even if the remark was found to be constitutional error, the appellant would not be entitled to reversal in the circumstances of this case. First, the defense did not object to the prosecutor's remark. Second, the trial judge charged the jury that the defendant need not take the stand, and that if he did not do so, this was not evidence, and the jury should draw no inference therefrom as to his guilt or innocence. Defense counsel also reiterated the judge's instruction that the defendant was not required to take the stand and noted that the defendant had not taken the stand because he had no obligation to do so. Considering all the circumstances, we are firmly convinced that the remark did not affect the jury's verdict. There being no reasonable possibility that the remark

contributed to the conviction, we find it harmless beyond a reasonable doubt. *Chapman v. California, supra.* We have recognized the constitutional harmless error doctrine in several cases. *E.g.,* syl. pt. 5, *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), *quoting,* syl. pt. 5, *State ex rel. Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975); syl. pt. 20, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974); syl. pt. 6, *State v. Britton,* 157 W.Va. 711, 203 S.E.2d 462 (1974).

### III

The defendant contends the trial court erred in admitting three gruesome photographs in evidence. Exhibits Nos. 11 and 12 are 5″ by 11″ color photographs portraying the crime scene. Exhibit No. 11 shows a small portion of the victim's face with the left eyeball bulging from its socket. It primarily depicts a substantial portion of the victim's brain lying on the floor beside the chair. Exhibit No. 12 shows primarily the wall directly behind the victim, splattered with blood, with pieces of skull and brain tissue adhering thereto, along with brain matter on the floor directly behind the chair. Exhibit No. 53 is a black-and-white photograph taken in connection with the autopsy that portrays a frontal view of the victim's head. These photographs are ghastly under any criterion and are clearly gruesome under the standards announced in *State v. Rowe,* 163 W.Va. 593, 259 S.E.2d 26 (1979) and elaborated on in *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659 (1980). Syllabus point 1 of *State v. Rowe,* 163 W.Va. 593, 259 S.E.2d 26 (1979), which was decided after the trial of the case now before the court, establishes the test for the admission of gruesome photographs:

> Gruesome photographs are not *per se* inadmissible, but they must have something more than probative value, because by the preliminary finding that they are gruesome, they are presumed to have a prejudicial and inflammatory effect on a jury against a defendant. The State must show that they are of essential evidentiary value to its case.

In order to properly consider the defendant's claim, we must review the circumstances in which the photographs were admitted. Just prior to the beginning of the trial defense counsel objected to Exhibit Nos. 11 and 12 on the ground that they were inflammatory. At trial the objection was renewed and defense counsel was heard in chambers. The trial court did not rule on the admissibility of the photographs at that time but stated he would admit them in evidence if shown to be relevant. Later, when the photographs were admitted into evidence, defense counsel made no objection to either photograph, and affirmatively stated he had no objection to the admission of Exhibit No. 12. Exhibit No. 53, though less gruesome than the color photographs, was properly objected to as being inflammatory when offered in evidence. None of the three photographs were essential to the State's case in view of other photographs that were properly admitted and the extensive testimony describing the crime scene.

In the particular circumstances of this case, no reversible error was committed. Defense counsel did not preserve his objection to the two color photographs. Ordinarily, an objection to the introduction of a document or object should be made when the matter is offered in evidence. *See* 75 Am.Jur.2d *Trial* § 164 (1974). The prosecution's theory was that the defendant lied about playing on the floor with his wife in an attempt to conceal a premeditated murder. In order to negate the prosecution's theory, defense counsel during closing argument specifically called the jury's attention to Exhibits Nos. 11 and 12 to show that the defendant's statements were made by a man in an hysterical, emotional state, produced by the grisly horror portrayed in the photographs. In this case, defense counsel not only failed to object to Exhibits Nos. 11 and 12 but he also used the photographs to support his theory of why the statements were made. We cannot conclude that his failure to object was inadvertent. The action of defense counsel may have been for tactual reasons. The evidence supported a first degree murder con-

viction but the jury verdict was for second degree murder.

■ Given these circumstances concerning the color photographs, the defendant cannot successfully contend that the admission of Exhibit No. 53 in any way prejudiced his case. We hold that where several gruesome photographs are admitted in evidence with an objection being made only to the least gruesome of such photographs, and where defense counsel during closing argument specifically calls the jury's attention to the other gruesome photographs, which photographs were not objected to when admitted in evidence, this Court will not find the admission of the least gruesome photograph reversible error on the ground of prejudice.

After carefully reviewing the record, we believe that defense counsel was diligent and that the defendant received a trial in which no prejudicial error occurred.

For the foregoing reasons, we affirm.

Affirmed.