363 S.E.2d 516

Paul NICHOLAS

v.

Lucien R. SAMMONS, Jr., Prosecuting
Attorney for Doddridge County, and
the Honorable Sam White, Judge, Third
Judicial Circuit.

No. 17919.

Supreme Court of Appeals of
West Virginia.

Nov. 19, 1987.

Jerald E. Jones, Clarksburg, for plaintiff.

Silas B. Taylor, Dist. Atty. Gen., for defendants.

MILLER, Justice:

The relator in this proceeding in prohibition, Paul Nicholas, was indicted by a grand jury in Doddridge County for obtaining money by false pretenses from the First National Bank of West Union. The relator seeks to disqualify the prosecuting attorney because he had previously represented the bank in civil matters, including title and collection work, and currently has outstanding loans and is a depositor of the bank. He also prays for the appointment of a special prosecutor.

The record in this proceeding indicates that Salem Pipe, Inc., a corporation, obtained a $30,000 loan from First National Bank of West Union in May, 1984. The relator, Paul Nicholas, as President of Salem Pipe, executed a Security Agreement listing a piece of drilling equipment as security for the loan. Thereafter, the bank declared the loan in default. The prosecuting attorney indicates that when he was contacted by the bank he referred the case to the state police which conducted an investigation. Based on this investigation, the relator was indicted for obtaining money under false pretenses in January, 1987. The indictment alleged that the relator had falsely stated the drilling equipment listed as security for the loan was owned by Salem Pipe.

In the proceedings here, the relator has raised as an additional fact in support of

recusal, i.e., that the prosecutor represented another creditor against the relator in a civil action styled *McCormick and Balog v. Paul Nicholas and Salem Pipe, Inc.*, No. 84–C–14. In his response to this allegation, the respondent prosecutor avers that this civil action was dismissed under the "two-year" rule in September, 1986, over four months prior to the return of the initial indictment. Furthermore, he asserts that the civil action had no relationship whatsoever to the bank or to the transaction which led to the relator's indictment.

The respondent prosecutor also represents that while he is one of several attorneys who has done collection work for the bank, he has never represented the bank in connection with any transaction involving the relator, nor has he ever been requested to do so. Furthermore, he also states that since the time the indictments were returned he has not performed any legal services for the bank in any capacity, nor has he performed title searches for any of the bank's customers. He also asserts that he has never been retained by the bank on a continuous basis, and to his knowledge, performed no more title and collection work than any other local attorney upon whom the bank relies for legal services. The respondent further denies any suggestion that any officer of the bank persuaded him to present the case for an indictment. He points out that he is a depositor in the only other bank in West Union and also has done title work for clients who have obtained loans from that bank.

Most courts which have considered the question of prosecutorial disqualification have articulated two general policy considerations that underlie the necessity of disqualification. One is based on the universally recognized principle that a prosecutor's duty is to obtain justice and not simply to convict. The United States Supreme Court in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935), put the prosecutor's role in the following terms:

"[He] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer."

We spoke to this point in Syllabus Point 3 of *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977):

"The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law."

*State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983); *State v. Kanney*, 169 W.Va. 764, 289 S.E.2d 485 (1982); *State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981). *See also, State ex rel. Moran v. Ziegler*, 161 W.Va. 609, 244 S.E.2d 550 (1978).

A second policy position is based on the fact that public confidence in the criminal justice system is maintained by assuring that it operates in a fair and impartial manner. Consequently, if a prosecutor has a conflict or personal interest in a criminal case that he is handling, this can erode the public confidence as to the impartiality of the system. *E.g., State v. Latigue*, 108 Ariz. 521, 502 P.2d 1340 (1972) (En Banc); *People v. Superior Court (Greer)*, 19 Cal.3d 255, 137 Cal.Rptr. 476, 561 P.2d 1164 (1977); *Burkett v. State*, 131 Ga.App. 662, 206 S.E.2d 848 (1974); *People v. Rhymer*, 32 Ill.App.3d 431, 336 N.E.2d 203 (1975); *State v. Tippecanoe County Court*, 432 N.E.2d 1377 (Ind.1982); *People v. Doyle*, 159 Mich.App. 632, 406 N.W.2d 893 (1987); *State v. Croka*, 646 S.W.2d 389 (Mo.App. 1983); *State v. Chambers*, 86 N.M. 383, 524 P.2d 999 (1974); *State v. Cooper*, 63

Ohio Misc. 1, 409 N.E.2d 1070 (1980); *Ex parte Spain*, 589 S.W.2d 132 (Tex.Cr.App. 1979) (En Banc); Annot., 31 A.L.R.3d 953 (1970).

Prosecutorial disqualification can be divided into two major categories. The first is where the prosecutor has had some attorney-client relationship with the parties involved whereby he obtained privileged information that may be adverse to the defendant's interest in regard to the pending criminal charges. The most obvious situation is where the prosecutor in the past had represented the defendant on the same or a related charge and obtained confidential information that could be used in the pending criminal case. *See generally*, Annot., 31 A.L.R.3d at 963.

A second category is where the prosecutor has some direct personal interest arising from animosity, a financial interest, kinship, or close friendship such that his objectivity and impartiality are called into question. *See generally*, Annot., 31 A.L.R.3d at 978.

As to the first category, the relator does not contend that the prosecutor obtained any privileged information arising from any prior representation. The fact that the prosecutor has in the past represented the bank on collection matters would not disqualify him, nor would his doing title searches for persons who borrow from the bank since there is no claim that adverse privileged information was obtained. The same reasoning applies to the dismissed creditor's suit.

Typical of the conflict category is *State ex rel. Moran v. Ziegler*, 161 W.Va. 609, 244 S.E.2d 550 (1978), where the attorney had been contacted by the defendant who was seeking to give himself up to the police. This attorney was subsequently appointed as a special prosecutor in the defendant's case. We held that his initial contact with the defendant created a conflict with his role as special prosecutor. In *State v. Britton*, 157 W.Va. 711, 203 S.E.2d 462 (1974), the prosecutor had met with the defendant after he had been indicted and had counsel, and had given him advice as to

a possible plea arrangement. We concluded that this created a conflicting interest.

The basic thrust of the relator's claim for disqualification is that the prosecutor's deposit with and loan from the bank and his periodic representation of the bank has, in effect, created a "friendship" with the bank which, in turn, gives him a personal interest in the underlying criminal case.

We discussed the law relating to the disqualification of a prosecuting attorney on the basis of a personal interest in convicting the accused in *State v. Knight*, 168 W.Va. 615, 285 S.E.2d 401 (1981). We outlined the nature of the disqualification in Syllabus Point 4, and concluded that the prosecutor should be disqualified:

> "Under circumstances where it can *reasonably be inferred that the prosecuting attorney has an interest in the outcome of a criminal prosecution beyond ordinary dedication to his duty to see that justice is done*, the prosecuting attorney should be disqualified from prosecuting the case. Thus, where the defendant in a criminal prosecution has been convicted previously of a crime committed against the prosecuting attorney, has failed to make court-ordered restitution to the prosecutor, and has been accused of the crime by the prosecuting attorney's secretary, who was the sole witness to the alleged criminal act, the prosecuting attorney should disqualify himself." (Emphasis added.)

We noted in *Knight* that the Code of Professional Responsibility contains a conflict of interest provision in DR 5–101, which states in part that: "[A] lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests." Canon 9 of the Code of Professional Responsibility also states that "a lawyer should avoid even the appearance of professional impropriety." We also observed in *Knight* that "[t]he ABA Standards for Criminal Justice 3-1-2, Conflicts of Interest (2d ed. 1980) states: '[a] prosecutor should avoid the appearance or reality of a conflict of interest with respect

to official duties.' " 168 W.Va. at 625, 285 S.E.2d at 407.[1]

In reviewing the few cases that involve a prosecutor who has some business relationship with the victim, we find that the courts have generally sought to analyze the nature of the relationship to determine if it was of sufficient magnitude to give rise to a reasonable conclusion that he might go beyond, in the words of *Knight*, his "ordinary dedication to his duty to see that justice is done." Syllabus Point 4, in part.

In *People v. Zimmer*, 51 N.Y.2d 390, 434 N.Y.S.2d 206, 414 N.E.2d 705 (1980), the court of appeals held that the prosecutor was disqualified because he was the corporation's general counsel and a shareholder. The corporation was characterized as follows: "while corporate in form, [it] essentially was run as a one-man enterprise." 51 N.Y.2d at 392, 434 N.Y.S.2d at 207, 414 N.E.2d at 706. Its founder, the defendant Zimmer, resigned, leaving the corporation financially imperiled apparently as a result of his misdealing with its assets. Subsequently, the prosecutor obtained a number of criminal indictments against Mr. Zimmer arising out of his handling of the corporate affairs. The court reasoned that his position as the general counsel and shareholder in the corporation created a substantial personal interest which disqualified him from prosecuting the defendant.

The Missouri Supreme Court in *State v. Newman*, 605 S.W.2d 781 (Mo.1980), refused to find the prosecutor disqualified where he was a personal friend of the deceased and a pallbearer at his funeral.

His law firm had represented the deceased in his personal and business affairs. At the time of trial he was representing the deceased's widow in an estate matter.[2] Likewise, the Louisiana Supreme Court in *State v. Monk*, 315 So.2d 727 (La.1975), refused to disqualify a prosecutor who was trying a defendant for armed robbery of a bank. The prosecutor at one time was counsel for a vice president and a member of its board of directors, but did not occupy these positions at time of trial.

In several earlier cases, disqualification was sought on the basis that the prosecutor was a depositor in the bank from which the defendant had illegally taken money. The disqualification issue was only briefly discussed and in two cases, the court found disqualification was not warranted, *Stapleton v. State*, 19 Ga.App. 36, 90 S.E. 1029 (1916); *State v. Bussa*, 176 La. 87, 145 So. 276 (1932); while in the third case recusal was ordered, *People v. Fitzsimmons*, 183 Mich. 284, 149 N.W. 976 (1914).

It is generally held that past representations of a victim on civil matters unrelated to the criminal charges involving the defendant, ordinarily will not disqualify a prosecutor. *E.g., Carter v. State*, 424 So.2d 1336 (Ala.Crim.App.1982); *Shuttleworth v. State*, 469 N.E.2d 1210 (Ind.App.1984); *State v. Hatfield*, 218 Neb. 470, 356 N.W.2d 872 (1984). This rule is distinguished from the situations where the prosecutor is currently representing the victim in a civil action which is connected to the occurrence that gave rise to the criminal proceedings. In this event, the prosecutor is ordinarily disqualified.

---

**1.** Circuit courts unquestionably have the authority to disqualify a prosecuting attorney from acting in connection with the indictment or prosecution of a criminal case under the provisions of W.Va.Code, 7–7–8, which provides, as pertinent here, that "if in the opinion of the court it would be improper for him or his assistants to act, the court shall appoint some competent practicing attorney to act." *State ex rel. Matko v. Ziegler*, 154 W.Va. 872, 179 S.E.2d 735 (1971); *State v. Smith*, 117 W.Va. 598, 186 S.E. 621 (1936).

**2.** In an earlier case, the Supreme Court of Missouri, without any factual elaboration, stated that assertions on appeal that the prosecutor was "counsel or depositor to the bank ... [and

had] personal friendship and political affiliation with its officials" would not result in reversible error where no objection was made below. *Garton v. State*, 454 S.W.2d 522, 526 (Mo.1970). Obviously, there is a substantially greater burden where the disqualification is not asserted at the trial level. *See Wright v. United States*, 732 F.2d 1048 (2d Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985). Some courts have concluded that the matter is waived if the disqualifying grounds are known and not raised at the trial level. *E.g., United States v. Heldt*, 668 F.2d 1238 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *People v. Jiminez*, 187 Colo. 97, 528 P.2d 913 (1974) (En Banc).

For example, in *Cantrell v. Commonwealth*, 229 Va. 387, 329 S.E.2d 22 (1985), a private prosecutor had assisted the state's attorney in the prosecution of a murder charge. He was retained by the family of the deceased victim who was their daughter. They also retained him in a civil action in which they were attempting to gain custody of their granddaughter from the defendant. There was also suggested the possibility of a wrongful death action by the family against the defendant. The Virginia Supreme Court concluded that a private prosecutor's ethical role is the same as a public prosecutor's and that he should have been disqualified.

To the same effect is *Ganger v. Peyton*, 379 F.2d 709 (4th Cir.1967), where the prosecutor represented the wife-victim in her divorce proceeding. The defendant husband had been charged with feloniously assaulting his wife. Even though the divorce action was not directly related to the assault charge, the court concluded that it was improper for the prosecutor to proceed on the criminal charge. It recognized that the prosecutor's control over the criminal charge gave him undue leverage in the pending divorce action.

In the present case we do not believe the facts as asserted are sufficient to warrant disqualification. The prosecutor's past association with the bank was not on a retainer basis. His filing occasional suits to collect debts owed to the bank and title examinations for persons obtaining real estate loans do not constitute the kind of close ties that would cast a shadow over his impartiality. He asserts that he does much the same work for the other bank, as do other local attorneys, and is a depositor in both banks. The prosecutor also states that since the indictment he has not done any work for the bank.

It appears that the court below initially held a hearing on the relator's motion. We are not advised of the exact content of the hearing or whether any evidence was presented. We spoke to the necessity of a hearing before a prosecutor could be disqualified from a case in Note 2 of *State ex rel. Goodwin v. Cook*, 162 W.Va. 161, 163, 248 S.E.2d 602, 603 (1978):

"Notwithstanding the statement in *State ex rel. Matko v. Ziegler*, 154 W.Va. 872, 882–883, 179 S.E.2d 735, 741–742 (1971), that the prosecutor can be summarily disqualified, it is questionable that he can be disqualified in a case without notice of the grounds for his disqualification and an opportunity to be heard, as a duly elected prosecutor may have an entitlement to office. *North v. West Virginia Board of Regents*, [160 W.Va. 248], 233 S.E.2d 411 (1977); *Waite v. Civil Service Commission*, [161 W.Va. 154], 241 S.E.2d 164 (1977); *see, e.g., State ex rel. Ilvedson v. District Court*, 70 N.D. 17, 291 N.W. 620 (1940); *State ex rel. Thomas v. Henderson*, 123 Ohio St. 474, 175 N.E. 865 (1931); *Lattimore v. Vernor*, 142 Okl. 105, 288 P. 463 (1930); *Smith v. Gallagher*, 408 Pa. 551, 185 A.2d 135 (1962); *State v. Flavin*, 35 S.D. 530, 153 N.W. 296 (1915); Annot., 84 A.L.R.3d at 124." [3]

The relator in this case does not assert that he was denied an opportunity to adequately develop his claim, and in view of this and the reasons heretofore stated, the writ of prohibition is denied.

Writ denied.

---

**3.** We do not suggest that the movant is entitled to have an evidentiary hearing in every case where a motion to disqualify a prosecutor is made. Where the grounds asserted are patently insufficient, the court is entitled to summarily dismiss the motion.