524 S.E.2d 906

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Walter Lee SWAFFORD, II, Defendant Below, Appellant.**

**No. 25844.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1999.

Decided Nov. 19, 1999.

Dissenting Opinion of Justice Maynard Dec. 16, 1999.

Concurring Opinion of Chief Justice Starcher Jan. 10, 2000.

---

**8.** *Committee on Legal Ethics v. Veneri,* 186 W.Va. 210, 411 S.E.2d 865 (1991).

Darrell V. McGraw, Jr., Esq., Attorney General, Silas B. Taylor, Esq., Senior Deputy Attorney General, Charleston, West Virginia and Cara A. Carnes, Legal Intern, Morgantown, West Virginia, Attorneys for Plaintiff Below, Appellee.

Matthew W. Crabtree, Esq., Crabtree Law Offices, Charleston, West Virginia, Attorney for Defendant Below, Appellant.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Fayette County entered on May 28, 1998. Pursuant to that order, the appellant and defendant below, Walter Lee Swafford, II (hereinafter "defendant"), was sentenced to life imprisonment without mercy upon a jury verdict of guilty of first-degree murder. The defendant was also found guilty of conspiracy to commit a felony for which he received a one-to-five-year sentence. In this appeal, the defendant contends that the prosecutor's comments during closing arguments alluding to his failure to testify constitute reversible error. He also asserts that his trial was barred by the doctrine of double jeopardy. Finally, the defendant claims that the circuit court erred by refusing to strike a juror for cause when it was revealed that the juror worked for the attorney who was initially appointed to represent the defendant but withdrew because of a conflict of interest. This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the defendant's convictions are reversed.

I.

On June 7, 1997, the defendant and his friend, Mark Yoney, ran into Margaret Talouzi, Tara Williams, and H.J., a juvenile,[1] at

---

1. H.J. is referred to by her initials in accordance with our customary practice for cases involving juveniles and sensitive facts. *See In the Matter of* *Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

a Pit Row convenience store in Oak Hill, West Virginia. The girls told the defendant and Yoney that they had met a man named Joseph Hundley the night before, and he had invited them to come to his house that evening to "strip dance" in exchange for money. The girls said they planned to go to Hundley's house and trick him out of his money. Yoney expressed an interest in the plan so the girls went back to his apartment with him and the defendant. At the apartment, Yoney and the defendant decided to accompany the girls to Hundley's house. The five agreed that if the girls were unable to trick Hundley out of his money, the guys would help them take the money by force. Yoney suggested that they take a gun, but the girls and the defendant were against the idea.

Upon arrival, the girls went into Hundley's house while the two men stayed in the car. Hundley showed the girls that he had the money to pay them for dancing. Shortly thereafter, the defendant and Yoney entered the house. Yoney pointed a gun at Hundley's head and demanded the money. Hundley refused to give it to them and a struggle ensued. The girls rushed out to the car. After they heard a gun shot fired in the house, the girls saw Hundley run outside. According to Talouzi and H.J., they saw the defendant come out of the house behind Hundley and raise his arm. At that point, they heard another gunshot. Hundley ran toward his neighbor's house and the defendant and the others fled the scene. The next day, Hundley was found dead in his neighbor's yard. An autopsy showed that he died of a bullet wound that had punctured his lung.

The defendant was indicted in September 1997 and charged with first-degree murder, attempted aggravated robbery, and conspiracy to commit a felony. Trial commenced on January 5, 1998, but ended in a mistrial upon motion by the State once it was learned that one of the jurors was related to the defendant. A second trial began on January 20, 1998. After hearing all of the evidence, the jury found the defendant guilty of first-degree murder without a recommendation of mercy and conspiracy to commit a felony. He was sentenced to life imprisonment for the offense of first-degree murder and one-to-five-years imprisonment for the offense of conspiracy to commit a felony. This appeal followed.

## II.

■ As his first assignment of error, the defendant contends that the prosecutor improperly alluded to the fact that he did not testify at trial. The prosecutor commented as follows during closing argument:

> But for Walter Swafford and Mark Yoney, Joseph Hundley would be alive today. You didn't hear from Joseph Hundley from that witness stand. That's why the testimony of those girls was important.

> Where would the State have been in this case if those girls had a good lawyer like Mike Gallaher [defense counsel] and they had said, 'We ain't telling you nothing. We don't'—'We got our constitutional rights. We ain't telling you nothing.' Where would we be? Where would we be? All five of them would be walking the street, wouldn't they?

The defendant's trial counsel objected to these comments and moved for a mistrial, but the trial court overruled the objection and denied the motion.

■ W.Va.Code § 57-3-6 (1923) provides that a criminal defendant's decision to invoke his right to not testify as guaranteed by the Fifth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution "shall create no presumption against him, nor be the subject of any comment before the court or jury by anyone." In this regard, we have stated that:

> The general rule formulated for ascertaining whether a prosecutor's comment is an impermissible reference, direct or oblique,

to the silence of the accused is whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify. *United States v. Harbin,* 601 F.2d 773 (5th Cir.1979); *United States v. Muscarella,* 585 F.2d 242 (7th Cir.1978); *United States v. Anderson,* 481 F.2d 685, 701 (4th Cir.1973), *aff'd,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *United States ex rel. Leak v. Follette,* 418 F.2d 1266 (2nd Cir.1969), *cert. denied,* 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970); *Hayes [Hays] v. Oklahoma,* 617 P.2d 223 (Okl. Cr.App.1980).

*State v. Clark,* 170 W.Va. 224, 227, 292 S.E.2d 643, 646–47 (1982). In addition, this Court has held that: "Remarks made by the State's attorney in closing argument which make specific reference to the defendant's failure to testify, constitute reversible error and defendant is entitled to a new trial." Syllabus Point 5, *State v. Green,* 163 W.Va. 681, 260 S.E.2d 257 (1979).

In *Green,* the defendant was convicted of second-degree sexual assault of a twenty-six-year-old woman. On appeal, the defendant argued that the prosecutor made highly inflammatory remarks during his closing argument that amounted to comments on his failure to testify. Specifically, the prosecutor stated,

'None of those facts are in dispute. No one said those things didn't take place....' 'You know, there is one thing I know which has been hidden in this case.... If Fred Muth [defense counsel] can think of one reason, one lousy little reason at all why this girl would turn a finger at his client sitting over there, other than the fact that he committed this crime, he would tell you what it was.... There is a motive, you know what it is, I know what it is, everybody knows what it is. It is because he did it. Whether he hangs his head there and won't look at you or not, he did it, and

there is no one in this Court Room that ever said he didn't do it....' 'Let me tell you reasonable doubt is not a cloak people come in and hide behind, and point fingers at people and says, "Uh-huh, prove it." '

163 W.Va. at 695, 260 S.E.2d at 265. After reviewing the transcript of the trial, this Court concluded that the remarks made by the prosecutor amounted to a specific reference to the defendant's failure to testify.

The prosecutor's comments made during closing argument in the case *sub judice* are similar to those made by the State in *Green.* In both instances, the prosecutor specifically mentioned the defendant's trial counsel in a way suggesting that the defendant had been advised not to testify because of his guilt. In this case, the prosecutor underscored the defendant's failure to testify even more by emphasizing that the co-defendants chose to testify instead of asserting their constitutional rights. He also remarked that the victim could not testify because he was murdered. Undoubtedly, the prosecutor's comments served to remind the jury that the defendant did not testify. Accordingly, we reverse on this ground.

■ The defendant also claims that his trial was barred by the doctrine of double jeopardy. The Double Jeopardy Clause, also set forth in the Fifth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. Syllabus Point 1, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977). It also protects against a second prosecution for the same offense after conviction and prohibits multiple punishments for the same offense. *Id.* Double jeopardy can also be implicated where the jury is discharged before it has arrived at a verdict. *Keller v. Ferguson,* 177 W.Va. 616, 620, 355 S.E.2d 405, 408 (1987) (citations omitted).

■ The defendant contends the trial court abused its discretion at his first trial by granting a mistrial based on the discovery of

a family relationship between he and one of the jurors and consequently, placed him in double jeopardy in violation of the United States and West Virginia Constitutions. As explained above, during the defendant's first trial, the State learned that one of the jurors and the defendant were first cousins twice removed.[2] Although the juror did not know of the alleged relationship and had not intentionally failed to disclose this fact, the State, nonetheless, moved for a mistrial, and the motion was granted by the trial court. At the time the mistrial was granted, the defense had just rested its case.

■ The State argues that the defendant waived his double jeopardy claim because he did not raise the objection before the trial court. In *State v. Carroll,* 150 W.Va. 765, 769, 149 S.E.2d 309, 312 (1966), this Court stated that "the defense of double jeopardy may be waived and the failure to properly raise it in the trial court operates as a waiver." *See also Adkins v. Leverette,* 164 W.Va. 377, 381, 264 S.E.2d 154, 156 (1980) ("we subscribe to the proposition, that jeopardy, having attached, may be waived by the defendant and in a subsequent timely trial on the same offense said defendant cannot successfully claim that he is being subjected to double jeopardy" (citation omitted)). Assuming, without deciding, that the defendant waived the double jeopardy issue, we do not believe the defendant was placed in double jeopardy because of the trial court's decision to grant a mistrial.

■ We first note that the decision to declare a mistrial and discharge the jury is a matter within the sound discretion of the trial court. *State v. Williams,* 172 W.Va. 295, 304, 305 S.E.2d 251, 260 (1983). W.Va. Code § 62-3-7 (1923) provides that "in any criminal case the court may discharge the jury, when ... there is manifest necessity for such discharge." Generally, "[t]ermination of a criminal trial arising from a manifest necessity will not result in double jeopardy barring a retrial." Syllabus Point 4, *Keller, supra.* As we explained in Keller, "'the law

has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, *in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act,* or the ends of public justice would otherwise be defeated.... [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes ...' (Emphasis added)." 177 W.Va. at 620, 355 S.E.2d at 409, *quoting United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). In *State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 268-69, 134 S.E.2d 730, 734 (1964), *cert. denied,* 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30 (1964), we further explained that "[w]hile the term 'manifest necessity' has not been abstractly defined, we view it as the happening of an event, beyond the control of the court, which would require the discharge of the jury and would permit a new trial without justifying a plea of double jeopardy." Thus, in Syllabus Point 2 of *Thompson,* we held: "'The "manifest necessity" in a criminal case permitting the discharge of a jury without rendering a verdict may arise from various circumstances. Whatever the circumstances, they must be forceful to meet the statutory prescription.' [Syllabus Point 2,] *State v. Little,* 120 W.Va. 213 [197 S.E. 626 (1938)]."

In this case, the trial court questioned the juror who was allegedly related to the defendant after the State moved for a mistrial in order to determine whether the juror was aware of the relationship during *voir dire* proceedings. Satisfied that the juror had not intentionally withheld this fact, the court, nonetheless, granted a mistrial because of the risk of prejudice to both parties. The trial court explained that the State might not get a fair trial because of the family relationship between the juror and the defendant; and yet, the defendant might not receive a fair trial because the juror might feel a certain amount of pressure to find the defendant guilty because he was questioned about his impartiality.

■ Having thoroughly reviewed the record, we do not find that the circuit court

2. The juror's first cousin was the defendant's grandmother.

abused its discretion by granting a mistrial. We note that one of the *prima facie* grounds for disqualification of a juror is "kinship to either party within the ninth degree." *State v. Riley,* 151 W.Va. 364, 383, 151 S.E.2d 308, 320 (1966). The relationship between the juror and the defendant in this case was in the sixth degree. It is obvious from the record that the trial court did not know of the relationship between the juror and the defendant until the State moved for a mistrial on that basis. The trial court had no choice but to grant a mistrial once this relationship was disclosed. Because there was a "manifest necessity" to declare a mistrial, we, therefore, find the defendant's claim of double jeopardy to be without merit.

In light of our decision to reverse the defendant's conviction on another ground, we need not address the defendant's final assignment of error relating to the trial court's refusal to strike for cause one of the jurors who ultimately served on his case. Accordingly, for the reasons set forth above, the final order of the Circuit Court of Fayette County is reversed, and this case is remanded for a new trial.

Reversed and remanded.

Judge RISOVICH, sitting by temporary assignment.

Justice SCOTT did not participate.

MAYNARD, Justice, dissenting:

(Filed Dec. 16, 1999)

I dissent because I do not believe the prosecutor's statements at trial violated the defendant's constitutional right not to testify.

This Court has reversed a murder conviction and a conviction for sexual abuse of a four-year old child within the space of two weeks based on the arguments of prosecutors. *See State v. Stephens,* 206 W.Va. 420, 525 S.E.2d 301 (1999). It appears from these decisions that this Court does not believe that prosecutors should be allowed to make any effective closing arguments to a jury. It

must be remembered that criminal trials are adversarial proceedings in which prosecutors represent the people as well as the victims of crime. Accordingly, prosecutors have not only the right but the duty to make persuasive and compelling arguments. Further, prosecutors have wide latitude within the rules in making their arguments. This Court, however, has tied the hands of prosecutors with a perplexing collection of arbitrary, complex and unfair prohibitions, scattered among several cases, which no one can follow. These prohibitions have granted too much power to defendants and left prosecutors hamstrung and weakened.

The majority errs in the instant case by taking the prosecutor's remarks out of context and misconstruing them. This Court has stated:

"The general rule formulated for ascertaining whether a prosecutor's comment is an impermissible reference, direct or oblique, to the silence of the accused is whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify."

*State v. Clark,* 170 W.Va. 224, 227, 292 S.E.2d 643, 646 (1982) (citations omitted). It is not manifest or obvious that the language used by the prosecutor was intended to be a reminder that the defendant did not testify. Rather, the prosecutor was responding to defense counsel's closing argument wherein he attacked the validity of the testimony of the defendant's accomplices who testified for the State. Defense counsel asserted that these witnesses were proven liars and the State offered their testimony only because it had no other evidence linking the defendant to the charged crime. Defense counsel further characterized the witnesses' plea bargains with the State as inducements to lie:

And boy, do these girls ever have an incentive to come in and lie to you again on the witness stand to talk about this young man's alleged involvement, because they all three got a heck of a good deal. And I

commend their lawyers, whoever they are, for working out the deals that each of them got.

In response, the prosecutor contrasted the testimony of these witnesses with the inability of the deceased victim to take the stand. "But for [the defendant] and Mark Yoney, [the victim] would be alive today. You didn't hear from [the victim] from that witness stand. That's why the testimony of those girls was important." The prosecutor further emphasized the importance of the accomplices' testimony by stating that the State's case was insufficient if these witnesses had chosen to remain silent. One simply cannot reasonably conclude from this that the prosecutor's language was obviously intended to be a reminder that the defendant did not testify.

Also, the prosecutor's language was not of such a character that the jury *would naturally and necessarily* take it to be a reminder that the defendant did not testify. Again, it was more likely that the jury would take the prosecutor's remarks as a defense of the accomplices' plea bargains and testimony. This is how the trial court interpreted the remarks, stating, "[i]t's the Court's recollection that the remarks made by the prosecutor ... were addressed[ ] with regard to why these [plea bargains] were made." The trial judge witnessed not only the content but also the tenor and context of the prosecutor's comments. Therefore, the trial judge, and not this Court, is in the best position to determine the nature and intent of those comments.

Finally, the majority reverses the defendant's conviction based upon syllabus point 5 of *State v. Green,* 163 W.Va. 681, 260 S.E.2d 257 (1979) which states that "[r]emarks made by the State's attorney in closing argument which make specific reference to the defendant's failure to testify, constitute reversible error and defendant is entitled to a new trial." However, the prosecutor clearly did not make a specific reference here. At best, the remarks made by the prosecutor are ambiguous and *could possibly* be construed to be references to the defendant's silence. Thus, the majority adopts, *sub silentio,* a much more stringent test for determining whether the prosecutor committed reversible error by improperly commenting upon the defendant's decision not to testify.

In summary, the majority isolates a small portion of the prosecutor's response, takes it out of context, and unreasonably interprets it as a reference to the defendant's failure to testify. The result is the unwarranted reversal of a first-degree murder conviction. I, on the other hand, would find the prosecutor's comments proper in the context in which they were made and affirm the trial court. Accordingly, I dissent.

STARCHER, Chief Justice, concurring:

(Filed Jan. 10, 2000)

I concur with the majority's decision, and write to emphasize a fundamental principle underlying the majority's opinion: a prosecutor has the utmost duty to be fair and just.

The actions of a prosecutor should be guided by two considerations. First, "a prosecutor's duty is to obtain justice and not simply to convict[.]" *Nicholas v. Sammons,* 178 W.Va. 631, 632, 363 S.E.2d 516, 518 (1987). *See also* Standard 3–1.2(c), *American Bar Association Standards for Criminal Justice* (3d ed. 1993) ("The duty of the prosecutor is to seek justice, not merely to convict.") Second, it is a prosecutor's duty to maintain "public confidence in the criminal justice system ... by assuring that it operates in a fair and impartial manner." *Nicholas v. Sammons,* 178 W.Va. at 631, 363 S.E.2d at 518.

While the prosecutor operates within the adversary system, the role of a prosecutor is not limited to convicting the guilty. A prosecutor, acting on behalf of the people, must diligently guard the rights of the accused as well as to enforce the rights of the public. We need only look in the newspaper or turn on the television to see stories of courts in other countries—like China—"diligently" pursuing convictions on behalf of the "people," with no regard for the rights of the

accused and no concept of fairness, justice, or due process of law.

A prosecuting attorney is not just an officer of the court, like every attorney, but is also a high public officer charged with representing the people of the State. *See West Virginia Constitution*, Article IX, Section 1; *W.Va.Code*, 7-4-1 [1971] ("It shall be the duty of the prosecuting attorney to attend to the criminal business of the State in the county in which he is elected and qualified ..."). The prosecutor must seek impartial justice for the guilty as well as the innocent. And, in discharging his or her duties, a prosecutor deserves and receives a high degree of support from the circuit courts, and receives the respect of the citizens of the county.

Wearing the cloak of the office, a prosecutor can therefore usually exercise great influence upon jurors. Because of this, the conduct and language of the prosecutor in a trial in which the accused's liberty is at stake should be forceful but fair, based upon the evidence, and not directed towards gaining a conviction through the aid of passion, prejudice or resentment. If the accused is guilty, he or she should be convicted only after a fair trial conducted according to the sound and well-established rules that are set in law.

I agree with my dissenting colleague that neither the prosecutor nor counsel for the accused should be unduly hampered or narrowed in addressing the jury. However, the prosecuting attorney is bound to rules of courtroom conduct the same as all other attorneys. The privilege of addressing the jury should never be taken as a license to state, or to comment upon, or to suggest that the jury draw an inference from, facts not in evidence, or for that matter to raise issues which a jury has no right to consider—issues such as race, religion, economic status, the accused's exercise of a constitutional right, or some other issue designed to encourage jurors to act with an improper motive.

Every citizen must be able to trust their criminal justice system. The public must be assured that the guilty will be punished and that the innocent will be exonerated. But when there is a reasonable question of guilt or innocence, the public should be assured that both sides will get a fair shot to prove their case. However, even the most conscientious prosecutors may be tempted to sneak their thumb onto the scale of justice to make it more certain that the jury reaches a guilty verdict.

As this Court recently said in *State v. Stephens*, 206 W.Va. 420, 427 n. 5, 525 S.E.2d 301, 308 n. 5 (1999), there is neither merit, viability, nor integrity in the argument that prosecutorial misconduct (intentional or accidental) is more tolerable in cases where the evidence strongly tends to show that an accused is guilty, but less tolerable when the evidence is less compelling. A prosecutor must work with the evidence that is available, and evidence is often a product of circumstances and luck. In fact, when a prosecutor has an excess of evidence, our rules specifically prohibit the prosecutor from "piling it on." *See West Virginia Rules of Evidence* Rule 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed ... by considerations of ... needless presentation of cumulative evidence.").

Similarly, a prosecutor may not more permissibly "pile on" the rhetoric and appeals to passion, prejudice or resentment, in cases where the evidence tends to show more clearly that a defendant is guilty, but be more strictly sanctioned for doing so in a "close case." Any average person can comprehend that such a distinction between what is permissible in the trial of an accused is patently unfair, and contrary to constitutional equal protection guarantees.

The rule encompassed in the majority opinion is not an "arbitrary, complex and unfair prohibition[ ]" for prosecutors as my dissenting colleague suggests. It is quite simple: a prosecutor has a duty to be scrupulously fair and just. A duty to seek justice, not convictions. A duty not to comment on an accused's exercise of fundamental constitutional rights, or appeal to the passions,

prejudices and feelings of resentment held by the jury.

I therefore concur.