672 S.E.2d 319

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Charles COWLEY, Defendant Below, Appellant.**

No. 33804.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 2008.

Decided Nov. 14, 2008.

Darrell V. McGraw, Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, for Appellee.

Frank J. Venezia, Esq., Shaffer & Shaffer, Madison, for Appellant.

PER CURIAM:[1]

The appellant, Charles Cowley, was indicted and convicted of second degree sexual assault by a jury. The appellant was sentenced to not less than ten nor more than twenty-five years. He now appeals his conviction and sentence, assigning various error by the circuit court during the trial.

For the reasons set forth below, we affirm.

## I.

The appellant, Charles Cowley, arrived at the Williams Trailer Park in Boone County, on Friday March 21, 2003, to visit with his friends, Jeff and Shannon Bowling. The Bowlings occupied a mobile home near a mobile home which was occupied by the adult victim, Sherry Holton, her three-year old daughter, and her live-in boyfriend Brett Albright.

On Saturday March 22, 2003, Brett Albright left his mobile home to attend a birthday party and did not return until the next day, leaving Sherry Holton and her daughter at the home. In the early afternoon hours of the same day, Jeff Bowling and the appellant left the Bowling residence to buy paint. After purchasing some paint, both Jeff Bowling and the appellant began huffing paint fumes to get high. Once Bowling and the appellant returned to the trailer park, Bowling returned to his home and went to sleep, but the appellant continued to huff the paint fumes.

Sometime after Saturday midnight the appellant telephoned Sherry Holton requesting a pack of cigarettes. Sherry left the cigarettes for the appellant on the bannister of her mobile home just outside the front door. A few minutes later, Sherry heard the appellant hollering her name outside her mobile home. The appellant apparently wanted to talk with her, but she refused. After her refusal to talk, the appellant then forced his way into her mobile home.

While in Sherry's house the appellant forced her to perform oral sex on him and to engage in sexual intercourse. While engaging in sexual intercourse, Sherry told the appellant that she heard a car and that it could be her boyfriend. Appellant then left the victim's mobile home. On his way out the appellant threatened her if she told anyone about what happened.

As soon as she was alone, Sherry attempted unsuccessfully to call her boyfriend. She then called her mother and father who instructed her to call 911. The 911 records reflect that her call was made at approximately 3:00 a.m. Sunday morning, March 23, 2003. Shortly after the 911 call was received, law enforcement officers arrived at the mobile home. The appellant was arrested within a few minutes after the officers arrived.

Later in the day of March 23, 2003, the appellant was formally charged with second degree sexual assault and burglary, and was incarcerated in lieu of bond. On April 8, 2003, the appellant was released on bond. On April 21, 2003, the grand jury returned an indictment charging the appellant with counts of burglary, second degree sexual assault, and first degree sexual abuse.

On October 27, 2003, while on bail for the pending charges involving Sherry Holton, the appellant was arrested again on charges of burglary involving a second victim. On January 22, 2004, the appellant was indicted for multiple offenses against the second victim. This indictment included the charge of burglary, attempted first degree sexual assault, malicious assault, assault during the commission of or attempting to commit a felony, and battery.

The appellant's trial in the instant case began on November 30, 2005, and the appellant was convicted on December 16, 2005, of second degree sexual assault. The appellant was found not guilty on all other counts in the indictment. Appellant's trial counsel included attorney Scott Brisco.

Nearly one year later, on November 21, 2006, the circuit court sentenced the appel-

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

lant to a term in the penitentiary for not less than ten nor more than twenty-five years. It is from the November 21, 2006, sentencing order that the appellant appeals.

## II.

The appellant's first assignment of error relates to his motion for a mistrial based on defense counsel's argument that the circuit court committed error by requiring defense counsel, Mr. Brisco, to continue representing the appellant following Mr. Brisco's request to be removed as appellant's counsel in this case.

In addressing circumstances in which mistrials are granted, the Legislature has adopted *W.Va.Code,* 62–3–7 [1923] which states in part that: "... in any criminal case the court may discharge the jury, when it appears that they cannot agree in a verdict, or that there is *manifest necessity* for such discharge." (Emphasis added.) This Court, however, has recognized in *State v. Swafford,* 206 W.Va. 390, 395, 524 S.E.2d 906, 911 (1999) that "the decision to declare a mistrial and discharge the jury is a matter within the sound discretion of the trial court."

■ This Court also has addressed mistrial and the application of *W.Va.Code,* 62–3–7 in Syllabus Points 2 and 3 of *State v. Little,* 120 W.Va. 213, 197 S.E. 626 (1938) holding that:

> 2. The "manifest necessity" in a criminal case permitting the discharge of a jury without rendering a verdict may arise from various circumstances. Whatever the circumstances, they must be forceful to meet the statutory prescription.
>
> 3. The power of a court in a criminal case to discharge a jury without rendering a verdict is discretionary; but the power "is a delicate and highly important trust" and must be exercised soundly ....

■ The question to be addressed in this case is whether the circuit court erred denying the appellant's motion for a mistrial based upon the circuit court's requiring Scott Brisco, one of the appellant's two attorneys, to continue representing the appellant after Mr. Brisco advised the court that he had previously represented the victim, Sherry Holton, in an incorrigibility juvenile matter.[2]

Appellant's brief suggests that Mr. Brisco advised the court of the alleged conflict shortly after his appointment; however, this is not corroborated in the record. The record, however, does reflect that Mr. Brisco did advise the court of the possible conflict during the trial sometime after the victim's testimony.

The issue first emerged at trial during the State's redirect of the victim's mother when the mother was asked about her daughter's education. Defense made an objection which included Mr. Brisco advising the judge of a possible conflict. Following the objection, the judge sustained the objection and required Mr. Brisco to proceed. Two days before the end of the trial Mr. Brisco again raised the issue claiming that he was in violation of Rule 1.9(a) of the *Rules of Professional Conduct,*[3] and made a motion for a mistrial based on his prior representation of the victim. The record reflects the following response by the circuit court:

> THE COURT: At this stage, it seems to me like if [Sherry Holton] knowingly consents to this representation, it seems like—even though it wasn't done before, it might be better to [get her consent] now, because [Sherry Holton] knows everything that—I don't guess she's going to be called back by anybody, maybe she would be.
>
> I think that would unring any bells that have been rung, and if she would say its

---

**2.** Mr. Brisco's representation of Sherry Holton was in 2001, approximately two years before his May 1, 2003, appointment as counsel for the appellant.

**3.**

**Rule 1.9. Conflict of interest: Former client.**
A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

okay, then I would say I could probably rule that you could go ahead and represent him.

After speaking to Sherry Holton off the record Mr. Brisco returned to court and made the following statement:

Your Honor, I had time to meet with [Sherry Holton], just the two of us, we discussed my prior representation. She says that she does recall me representing her. She says she does recall me having her sent to Florence Crittenton, and she does remember that.

I explained to her the situation, I explained to her Rule 1.9, and I really couldn't proceed without her permission. We have a document here that she did sign and date December 13, 2005,

I, [Sherry Holton], have consulted with my former attorney, L. Scott Brisco, regarding his representation of Charles Cowley in Boone County Circuit Court, Case No. 03–F–57.

Mr. Brisco has explained to me Rule 1.9 of the West Virginia Rules of Professional Conduct, and that I must consent to his representation of Mr. Cowley. I understand that I have the right to refuse to give my consent; however, after consulting with Mr. Brisco, I have freely, voluntarily and intelligently consented to his representation of Mr. Cowley.

I further state that at this time I am not under the influence of any mind—or mood-altering substances that would impair my ability to make this decision.

Signed [Sherry Holton] in her handwriting and also dated in her handwriting, 12–13–05

As soon as I walked in, she said, "I remember it, and you got me sent to Florence Crittenton."

Counsel for the State added:

MR. BAZZLE: I'll just put on the record Judge, because Mr. Brisco inquired about what I said to her or gave any advice. I did not, I told her this was all about her, I didn't know if she didn't give this consent what would happen with this trial, it's possible we would have to try it again, but that's something we were willing and able to do.

It was a decision for her to make. It was all about her. I think I told her two or three times that it was totally her decision, and she understood that and was willing to meet with Mr. Brisco in private.

.      .      .      .      .

THE COURT: Well, I think that this—are you withdrawing your motion [for mistrial] in lieu of all of this?

MR. BRISCO: Yes, Your Honor.

MR HATFIELD [co-defense counsel]: And, Judge, I think it is important too that Mr. Cowley, he has some rights here also, and I don't think it's a problem with you, Charles [Cowley], is it a problem Scott's prior representation of Sherry Holton?

THE DEFENDANT: No.

The appellant now argues on appeal that because Mr. Brisco gained information about Sherry Holton that could have potentially been used in cross-examination and perhaps aided in the appellant's defense, it is enough to invoke Rule 1.9(a) and create sufficient cause for a mistrial. In support of his argument the appellant cites several cases, none of which appear to be relevant to the instant case.

From our examination of the record we find no evidence to suggest that Mr. Brisco used any confidential information while cross-examining any witness—in particular the victim. We further find that there is no evidence that would suggest that Mr. Brisco failed to vigorously cross examine the victim, or any other witness, because of loyalty to his former client. In the instant case there simply is no evidence that Mr. Brisco's prior representation of the victim was even remotely much less *substantially* related to the issues presented at the appellant's trial.

Additionally, in the instant case Sherry Holton gave her written consent to Mr. Brisco's representation of the appellant. The appellant, himself, waived any objections to Mr. Brisco's representation of him based on his prior representation of Sherry Holton. Finally, the appellant on the record *withdrew* his motion for a mistrial.

We therefore find that no manifest necessity existed with respect to the instant case with respect to this aspect of the appellant's appeal which would have required a declaration of a mistrial and discharge of the jury.

The appellant next claims that the circuit court erred when it denied the appellant's motion to disqualify a juror, Melinda T., for cause.

■ It is now well-settled that the standard of review for deciding juror disqualification issues based on bias and prejudice is abuse of discretion. *See O'Dell v. Miller*, 211 W.Va. 285, 565 S.E.2d 407 (2002).

In the instant case, after questioning the prospective juror, defense counsel moved to strike juror Melinda T. for cause; the judge denied the motion. Defense counsel's argument focused on the juror's assertion that her service might cause her to flashback to her previous experience of being sexually abused and on her statement that she "thought" she could remain unbiased and unprejudiced.

The issue thus present is whether or not the record before this Court is sufficient for us to conclude that the circuit court abused its discretion in denying counsel's motion.

*W.Va.Code*, 56–6–12 [1923] provides:

Either party in any action or suit may, and the court shall on motion of such party, examine on oath any person who is called as a juror therein, to know whether he is a qualified juror, or is related to either party, or has any interest in the cause, or is sensible of any bias or prejudice therein; and the party objecting to the juror may introduce any other competent evidence in support of the objection; and if it shall appear to the court that such person is not a qualified juror or does not stand indifferent in the cause, another shall be called and placed in his stead for the trial of that cause. . . .

■ This has Court elaborated on juror disqualification issues most recently in Syllabus Point 3 and 4 of *O'Dell v. Miller*, 211 W.Va. 285, 565 S.E.2d 407 (2002) which held:

3. When considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances and to resolve any doubts in favor of excusing the juror.

4. If a prospective juror makes an inconclusive or vague statement during *voir dire* reflecting or indicating a possibility of disqualifying bias or prejudice, further probing into the facts and background related to such prejudice is required.

■ In this case inquiry into the juror's qualifications was made primarily by appellant's counsel—not the trial judge. A complete reading of the record in this case reveals that the juror acknowledged in clear and unequivocal terms that there are "two sides to every story" and that she could serve without any bias or prejudice.

Based upon our review of the record we cannot say that the circuit court abused its discretion in denying the appellant's motion to strike juror Melinda T. for cause. Therefore, we find that appellant's argument with respect to this juror to be without merit.

The appellant also assigns as error the circuit court's failure to strike other jurors. The appellant's counsel, however, did not object to the seating of the other jurors nor did counsel move to strike the jurors for cause. By accepting the jury panel as constituted after consultation with counsel, the appellant has waived any objection he may have had. We, therefore, find the appellant's argument with respect to the disqualification of other jurors to be without merit.

The appellant further assigns as error the circuit court's decision admitting evidence that the appellant attacked another woman, subsequent to the alleged date of the offenses in this case, while out on bond awaiting trial in the instant case. The appellant asserts that testimony about this subsequent act violated Rule 404(b).[4]

4. The circuit court had under consideration Rule 404(b) testimony of two females, but the State only presented the testimony of one at trial.

In discussing the standard of review to be applied to Rule 404(b) issues, this Court has stated:

The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W.Va. at 310–11, 470 S.E.2d at 629–30 (1996).

Furthermore, this Court in Syllabus Point 2 of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994) established the procedure for trial courts to follow in ruling upon the admissibility of Rule 404(b) evidence:

Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

In Syllabus Point 1 of *McGinnis, supra,* this Court also addressed the appropriate uses of Rule 404(b) evidence and the proper manner of instructing the jury:

When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

In this case the State filed its notice of intention to introduce Rule 404(b) evidence at the trial of the appellant. The State in its notice declared the purpose for which the evidence was to be offered—to show a common plan—the *modus operandi* of the crime. The appellant filed a motion to exclude the testimony of the victim of the alleged subsequent offense. The Court then conducted a evidentiary hearing with respect to the States' notice and the appellant's motion.

Based on the record, including the circuit court's order, we believe the court substantially complied with the *McGinnis* requirements. Furthermore, when the victim of the alleged subsequent incident testified during the trial, the circuit court instructed the jury as follows:

I need to instruct the jury. The jury is instructed that the testimony you just heard is admitted for a very limited purpose, and you must consider it only for the limited purpose for which it was admitted.

It is admissible only to prove a common plan, which means the method of operation of the defendant. It must not be consid-

ered by you for any other purpose. Specifically, you may not consider it as establishing that the defendant was a person of bad character, and that he acted in conformity with that bad character, and therefore he forcibly raped or attempted to rape the victim named in this indictment. It is only to prove the so-called common plan, which means the method of operation of the defendant.

Additionally, during the instructional phase of the trial the judge further instructed the jury regarding the relevant testimony.

The Court instructs the jury that the testimony of Misty Haney, which was elicited during this trial, was admitted for a very limited purpose, and you must consider the testimony of Misty Haney only for the limited purpose for which it was admitted. It was admissible only to prove the so-called common plan, which means the method of operation of the defendant.

It must not be considered by you for any other purpose. Specifically, you may not consider it in establishing that the defendant was a person of bad character and that he acted in conformity with that bad character, and therefore, he forcibly raped or attempted to rape the victim named in the indictment.

It is only admissible to prove a common plan, which means the method of operation of the defendant.

From our review of the record we find that the circuit court complied with the requirement for reviewing Rule 404(b) evidence and, therefore, we find no merit in this aspect of the appellant's appeal.

After a thorough review of the record, briefs, and argument we find no merit in the remaining assignments of error.

### III.

Based on the foregoing we hold that the circuit court did not abuse its discretion or commit error when it required defense counsel to continue in his representation of the appellant and denied the appellant's motion for a mistrial. Further, we hold that the circuit court did not abuse its discretion in denying the appellant's motion to remove a challenged juror. Finally, we hold that the record in this case supports a determination that there is sufficient evidence showing that the Rule 404(b) acts occurred, and that the trial court correctly found the Rule 404(b) evidence was admissible for a legitimate purpose. We therefore, hold that the circuit court did not abuse its discretion in ruling that the Rule 404(b) evidence should be admitted at trial.

Based on the foregoing, we affirm.

Affirmed.