COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Russell,* Ortiz and Raphael
Argued at Richmond, Virginia


WILLIAM DAVID ROGERS

                                                MEMORANDUM OPINION** BY

   v.        Record No. 0713-21-2                 JUDGE STUART A. RAPHAEL
                                                     JULY 19, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LANCASTER COUNTY
R. Michael McKenney, Judge

Jennifer Quezada (Miriam Airington-Fisher; Bianca White;
Airington Law, on briefs), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


William David Rogers appeals his convictions for abducting his wife and for possession

of ammunition by a felon.  He raises nine assignments of error that challenge every phase of the

trial court's handling of this case, from its decision not to disqualify the prosecutor to its

admission of prior-bad-acts evidence at the sentencing hearing.  Finding that none of his

challenges has merit, we affirm.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, ___ (2022) (quoting

---

     * Justice Russell participated in the hearing and decision of this case prior to his
investiture as a Justice of the Supreme Court of Virginia.

     ** Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On March 31, 2019, William Rogers and his wife, Sherry, arrived home after spending several hours at a local bar.  Rogers was intoxicated.  He was also upset that he had been "cut off" by the bartender.  C.V., Sherry's thirteen-year-old son, was at home playing with two friends, L.N. and D.N.  Rogers asked L.N. to go into the master bedroom and retrieve a bottle of wine that was stored in the closet.

When L.N. could not find the wine, Sherry told him that it was not in the closet.  Rogers became enraged, entering the bedroom and yelling at Sherry that she was undermining what he had said—he was certain there was wine in the closet.

Sherry tried to leave the bedroom, but Rogers pushed her over the bed and blocked her exit.  She eventually got out and collected her keys and cell phone, but Rogers grabbed them from her, jumped on top of her, and restrained her arms.  Sherry pried her hands loose and pushed Rogers hard enough to throw him off balance.  She then escaped through the back door, ran to the neighbor's house, and called the police.

Deputy Ann Phelps arrived at the house after the confrontation.  Rogers refused to open the door, yelling at Deputy Phelps, "F--- you, Ann."  After settling down, and with the deputy's insistence, Rogers returned the cell phone to Sherry.  Police charged Rogers with assault and battery and abduction.

Another incident occurred on February 16, 2020.  Rogers confronted Sherry in the bedroom, telling her that she was "useless" and complaining she "wasn't helping around the house."  Sherry went to the living room to avoid the confrontation.  Rogers followed her there,

- 2 -

telling her to "get out." The argument moved to the kitchen. C.V. began to scream, "[L]eave us alone, we'll leave." Rogers yelled at C.V., grabbing him with both hands around the back of his neck. As a result of that incident, Rogers was arrested on February 27, 2020, and charged with assault and battery.

After Rogers was arrested, Sherry told the Commonwealth's Attorney that Rogers had ammunition in the house. Since Rogers was a felon, his possession of ammunition would violate Code § 18.2-308.2. Detective O'Bier obtained a search warrant. When he arrived to execute the warrant, however, Sherry was present and consented to the search. After Detective O'Bier found a box of ammunition in Rogers's bedroom closet, Rogers was charged with being a felon in possession of ammunition.

In August 2020, Rogers was tried on two counts of assault and battery against a household member and one count of abduction. He was convicted of all three offenses. After acquiring new counsel, Rogers moved to vacate the convictions. The court dismissed the 2019 assault-and-battery charge as duplicative of the abduction charge and vacated the 2020 assault-and-battery charge for ineffective assistance of counsel. The court left the abduction conviction intact.

Before Rogers was tried on the felon-in-possession charge, he moved to disqualify the prosecutor and to suppress the ammunition evidence. The trial court denied both motions. Rogers was tried and convicted of the felon-in-possession charge. The trial court denied his motion for reconsideration.

At the sentencing hearing, the Commonwealth attempted to introduce various evidence of Rogers's prior bad acts. The court admitted several exhibits but excluded others. The trial court sentenced Rogers to five years in prison, all suspended, on the felon-in-possession conviction, ten years, four suspended, on the abduction conviction, and ten years' supervised probation

following his release from incarceration. Rogers was also barred from contacting Sherry Rogers or any member of her family.

ANALYSIS

Rogers asserts nine assignments of error challenging six aspects of the trial proceedings: the denial of his motion to suppress the ammunition evidence, the denial of his motion to disqualify the prosecutor, the sufficiency of the evidence for each conviction, the admission of prior-bad-acts evidence at sentencing, and the trial court's upward departure from the sentencing guidelines.

A. *The trial court did not err in denying the motion to suppress (Assignment of Error 4).*

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that an appellate court must review de novo on appeal." *Bryant v. Commonwealth*, 72 Va. App. 179, 186 (2020) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)).

Rogers claims that the search-warrant affidavit for the ammunition was defective. The affidavit by Detective O'Bier detailed his phone conversation with Sherry in which she told him that there was ammunition in the residence and that it had "always been" there. It also stated that Rogers is a felon. Rogers claims that the affidavit was defective because it did not say where in the house the ammunition was located or whether the ammunition belonged to Rogers. He also complains that the affidavit omitted that Rogers had already been arrested on other charges and that Sherry, who was pressing charges against him, was the person who told the police about the ammunition. Rogers's brief, however, identifies no legal authority that the affidavit—which was regular on its face—had to contain those details.

What is more, Rogers offers no response to the Commonwealth's argument that the validity of the search-warrant affidavit is irrelevant because Sherry consented to the search of the

- 4 -

marital home. While the Fourth Amendment has been interpreted to "prohibit[] the warrantless entry of a person's house as unreasonable *per se*," there is an exception when a search is conducted "with the voluntary consent of an individual possessing authority." *Georgia v. Randolph*, 547 U.S. 103, 109 (2006). A person with authority to consent could be "the householder" or "a fellow occupant wh.o shares common authority over property, when the suspect is absent." *Id.* A person who has "joint access or control for most purposes" may also consent. *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008) (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)).

Under that standard, Sherry had authority to consent to the search. She had lived in the marital home since marrying Rogers in 2017. Although Sherry and C.V. lived with her mother after Rogers behaved violently towards C.V. in 2020, Sherry continued to go back and forth to the house to get her belongings. She had the key and retained unfettered access to the marital residence. Indeed, Rogers never challenged her authority to consent to the search.

Thus, the trial court did not err in denying the motion to suppress the ammunition evidence.

B. *The trial court did not err in denying the motion to disqualify the prosecutor (Assignment of Error 7).*

Rogers challenges the trial court's denial of his motion to disqualify the prosecutor, arguing that Commonwealth's Attorney Anthony Spencer had a personal interest in the matter that called into question his objectivity and impartiality. In reviewing a trial court's ruling on such a disqualification motion, we defer to "the historical facts" found by the trial court but "apply a de novo review to determine" whether the trial court erred in refusing disqualification. *Price v. Commonwealth*, 72 Va. App. 474, 488 n.5 (2020) (quoting *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013)).

- 5 -

To "ensure that the accused receives a fair trial," the prosecutor must "conduct '[an] impartial prosecution.'" *Id.* at 485 (quoting *Lux v. Commonwealth*, 24 Va. App. 561, 568 (1997)). "The due process rights of a criminal defendant under both the Virginia and United States Constitutions are violated when a Commonwealth's Attorney who has a conflict of interest relevant to the defendant's case prosecutes the defendant." *Powell v. Commonwealth*, 267 Va. 107, 138 (2004); *Price*, 72 Va. App. at 485.

Whether a prosecutor has a disqualifying conflict of interest depends on "the circumstances of the individual case, and the burden is on the party seeking disqualification . . . to present evidence establishing the existence of disqualifying bias or prejudice." *Brown v. Commonwealth*, 74 Va. App. 721, 737 (2022) (alteration in original) (quoting *Powell*, 267 Va. at 138). Disqualifying conflicts include when the prosecutor has a former or ongoing attorney-client relationship with the defendant or persons with a financial interest in the outcome, or a "direct personal interest arising from animosity, a financial interest, kinship, or close friendship." *Lux*, 24 Va. App at 569 (quoting *Nicholas v. Sammons*, 363 S.E.2d 516, 518 (W. Va. 1987)). To warrant disqualification, however, the evidence "must reflect that the prosecutor is acting not within the dictates of the law, but [that he] has strayed outside those parameters in furtherance of a personal animus against the defendant." *Powell*, 267 Va. at 139.

Penny Angelone, a witness who had once been romantically involved with Rogers, testified that Spencer told her that Rogers was one of four county residents who belonged in jail. She said that Spencer asked about Rogers's medical history because he wanted him incarcerated long enough to "die in prison." Spencer urged her to press additional charges against Rogers and to testify at the sentencing hearing. He told her to consider that Rogers would "attack [Spencer] and his family" if Rogers were "let go." The record, however, does not reflect any instance in which Spencer urged Angelone to testify untruthfully.

Spencer's remarks do not reflect a conflict of interest. Rogers failed to prove that Spencer had any "direct personal interest" in the outcome arising from "animosity, a financial interest, kinship, or close friendship." *Lux*, 24 Va. App. at 569 (quoting *Nicholas*, 363 S.E.2d at 518). Spencer had no prior attorney-client relationship with Rogers or any witness. *See id.* Spencer admitted that he "did identify people . . . walking the streets of Lancaster County" whom he "thought were dangerous." He wanted to prosecute Rogers because he was convinced that Rogers was dangerous and violent. But Spencer testified that he did not know Rogers personally and bore no animus towards him. He said there was "no personal interest here. There is only an interest in locking up violent people, protect[ing] the public. That is it."

Spencer's remarks to Angelone, as the trial court put it, may have been "inartfully stated." But Rogers offered no evidence of any disqualifying conflict or any violation by Spencer of his legal duties or professional ethics.

Rogers is incorrect that Spencer's decision to reinstate the abduction charge that had been previously nolle prossed evidenced ethical impropriety. "[I]t is well established that the choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth's Attorney." *Barrett v. Commonwealth*, 268 Va. 170, 178 (2004) (quoting *Kauffmann v. Commonwealth*, 8 Va. App. 400, 410 (1989)). That discretion extends to "the institution of criminal charges, as well as their order and timing." *Id.* (quoting *Bradshaw v. Commonwealth*, 228 Va. 484, 492 (1984)).

Nor did Rogers establish prosecutorial vindictiveness. "We review a trial court's factual findings on prosecutorial vindictiveness for plain error, but we review its legal analysis *de novo*." *Davis v. Commonwealth*, 70 Va. App. 722, 735 (2019) (quoting *Barrett (Clark) v. Commonwealth*, 41 Va. App. 377, 392 (2003), *aff'd*, 268 Va. 170 (2004)). To be sure, "due process forbids conviction on . . . vindictively motivated charges." *Id.* But the defendant bears

- 7 -

the burden of showing that "the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Id.* (quoting *Battle v. Commonwealth*, 12 Va. App. 624, 629 (1991)). The defendant must prove "actual vindictiveness." *Barrett*, 268 Va. at 178.

Rogers failed to make that showing here. Yes, Spencer was highly motivated to charge and convict Rogers. But Rogers failed to prove that Spencer instituted charges against him because Rogers had chosen to exercise a legal right. Reviewing the question de novo, we agree with the trial court's assessment that Rogers failed to show that Spencer's conduct reflected "anything other than zealous representation of the interests of the Commonwealth in these cases."

### C. The evidence was sufficient to support the abduction conviction (Assignments of Error 3 and 6).

The abduction statute provides that "[a]ny person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty . . . shall be deemed guilty of 'abduction.'" Code § 18.2-47(A). The statute "contains 'both a detention and a specific intent element.'" *Walker v. Commonwealth*, 74 Va. App. 475, 493 (2022) (emphasis omitted) (quoting *Commonwealth v. Herring*, 288 Va. 59, 75 (2014)). "The abduction statute does not contain a temporal requirement, which means a victim can be detained under the statute even if only for the briefest of moments." *Brown*, 74 Va. App. at 732-33.

In two assignments of error, Rogers targets only the intent element, arguing that the evidence failed to prove beyond a reasonable doubt that he intended to deprive Sherry of her liberty. "We apply a deferential standard of review to challenges based on the sufficiency of the evidence, and the decision of '[t]he lower court will be reversed only if that court's judgment is

plainly wrong or without evidence to support it.'" *Otey v. Commonwealth*, 71 Va. App. 792, 797 (2020) (alteration in original) (quoting *Cartagena v. Commonwealth*, 68 Va. App. 202, 207 (2017)). "[T]he relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).

There was enough evidence here for a rational fact finder to conclude that Rogers intended to deprive Sherry of her liberty.[1]  "Intent is the purpose formed in a person's mind" and may be inferred from either "words or conduct." *Herring*, 288 Va. at 75 (first quoting *Howard v. Commonwealth*, 207 Va. 222, 228 (1966); then quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013)).  While "detention alone is not dispositive" of the intent-to-deprive element, "[w]hen a defendant accomplishes an abduction by seizing . . . a victim, it *may* be a reasonable inference just from those physical actions that the defendant's intent was to deprive the victim of [his] personal liberty." *Walker*, 74 Va. App. at 493 (alterations in original) (quoting *Burton v. Commonwealth*, 281 Va. 622, 628 (2011)).

During the 2019 altercation, Rogers pinned Sherry to the bed and prevented her from leaving the bedroom.  Despite her multiple attempts to break away, he kept her there for ten minutes.  After she broke free and went to the living room, he took her keys and cell phone while she was "huddled in the fetal position."  He jumped on top of her to prevent her from leaving.

---

[1] Rogers argues in his reply brief that the evidence also failed to prove the other element: that he, in fact, deprived Sherry of her liberty.  We seldom consider arguments "raised for the first time in a reply brief," *Jeter v. Commonwealth*, 44 Va. App. 733, 740 (2005), let alone arguments like this one that are not encompassed in an assignment of error, *see* Rule 5A:20(c)(1); *Riddick v. Commonwealth*, 72 Va. App. 132, 146 (2020).  Even assuming for argument's sake that this claim was not procedurally defaulted, however, the evidence canvassed below was sufficient for the trial court to find that Rogers, in fact, deprived Sherry of her liberty.

He restrained her arms. He kept her in the living room for fifteen to twenty minutes. Sherry screamed at him to let her go and called for help at the top of her lungs. She was so distressed that she urinated on herself. She was finally able to push Rogers hard enough to throw him off balance, allowing her to escape through the back door.

Sherry's account was corroborated by L.N., her son's friend who witnessed part of the encounter. L.N. testified that Rogers and Sherry "started arguing" and that Rogers "pushed [Sherry] down" and "was holding her down" on the bed. And Rogers himself admitted that he took Sherry's cell phone and did not return it until after Deputy Phelps arrived.

In short, Rogers physically prevented Sherry from leaving the house at multiple points throughout the 2019 altercation, refusing her repeated pleas to let her go and resisting her efforts to get away. That evidence sufficed to show that Rogers intended to control her movements and to deprive Sherry of her liberty. *See id.* at 494.

### D. The evidence was sufficient to support the felon-in-possession conviction (Assignments of Error 1, 2, and 5).

Code § 18.2-308.2(A) makes it "unlawful for . . . any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm." In challenging his conviction under that statute, Rogers does not contest his status as a felon; his December 2019 conviction for unlawful wounding was admitted into evidence. Rather, he claims that the Commonwealth failed to prove that he intended to possess the ammunition that was found in his bedroom closet. He also argues that the Commonwealth failed to exclude the possibility that the ammunition belonged to someone else.

We are not persuaded. It is true that Rogers was in jail when the ammunition was seized from his bedroom closet. Consequently, the Commonwealth had to prove that Rogers constructively possessed the ammunition. To do that, the Commonwealth had to show that

- 10 -

Rogers, at some point when he occupied the house, "was aware of the presence and character of the [ammunition] and that the [ammunition] was subject to his dominion and control." *Rawls v. Commonwealth*, 272 Va. 334, 349 (2006). As noted above, a challenge to the sufficiency of the evidence is reviewed for an abuse of discretion, and the conviction will be overturned only if the judgment is plainly wrong or without evidence to support it. *Otey*, 71 Va. App. at 797.

Here, the box of ammunition was found in plain view at eye-level in Rogers's closet in the bedroom that Rogers shared with Sherry. Sherry testified that the ammunition belonged to Rogers. She saw the ammunition in the closet when she first moved into the house in 2017, after they were married. And the ammunition was still there when she left the house in February 2020. Sherry stored only a few of her dresses in the closet; everything else belonged to Rogers. The evidence thus sufficed to show that, following his felony conviction in December 2019, and until he was jailed in February 2020, Rogers "was aware of the presence and character" of the ammunition and that the ammunition "was subject to his dominion and control." *Rawls*, 272 Va. at 349.

Rogers theorizes that the ammunition could have belonged to someone else, or that Sherry may have planted the ammunition during the two weeks between the arrest and the search. He claims that the Commonwealth failed to exclude either hypothesis of innocence.

But "[t]he factfinder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Haas v. Commonwealth*, 299 Va. 465, 468-69 (2021) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)). While "a factfinder cannot 'arbitrarily' choose . . . between two equally plausible interpretations" the "one that incriminates the defendant," an arbitrary choice occurs "only when no rational factfinder could believe the incriminating interpretation . . . and disbelieve the exculpatory one." *Vasquez v. Commonwealth*, 291 Va. 232, 250 (2016).

- 11 -

Rogers cannot satisfy that standard here. Sherry's testimony, summarized above, established that the ammunition belonged to Rogers, that it had been in Rogers's closet from the beginning of their relationship, and that it remained there until the search. The trial court credited her testimony. Indeed, defense counsel did not even try to cross-examine Sherry.

The principal case that Rogers cites is distinguishable. In *Cordon v. Commonwealth*, 280 Va. 691 (2010), the Commonwealth failed to exclude the reasonable hypothesis of innocence that the cocaine at issue belonged to someone else. *Id.* at 696. The cocaine was found in a cooler in the bedroom of a house belonging to the defendant's uncle, a bedroom that the defendant had last occupied two days before the cooler was found. *Id.* Although some of the defendant's other belongings were found in the bedroom, he presented evidence that he lived elsewhere. *Id.* "There was no evidence of ownership of the cooler, a very portable item, and no evidence placed Cordon at the house at any time" in the previous two days. *Id.* Here, by contrast, the evidence established that the ammunition in Rogers's bedroom closet belonged to him and had been there for years, including after his felony conviction, at a time when Rogers had unfettered access to the closet. *Accord Ervin v. Commonwealth*, 57 Va. App. 495, 511-12 (2011) (en banc) (distinguishing *Cordon* on similar grounds).[2]

We thus find no error in the trial court's rejection of Rogers's theory of innocence, in its finding Rogers guilty of being a felon in possession of ammunition, or in its denial of his motion to reconsider.

---

[2] Although unpublished opinions are not precedential, we find *Booth v. Commonwealth*, No. 0532-19-2, 2020 WL 543574 (Va. Ct. App. Feb. 4, 2020), distinguishable for the same reason. Although some of Booth's belongings were found in the bedroom of the residence where the ammunition was discovered and where Booth at least sometimes resided, "no testimony or documentary evidence was introduced establishing that he was ever present in the bedroom when the ammunition was there." Slip op. at 5, 2020 WL 543574, at *3. Unlike in *Booth*, Sherry's testimony here sufficed to establish that the ammunition was in Rogers's bedroom closet when Rogers was living in the house.

*E. The court did not err in considering Rogers's unadjudicated misconduct at sentencing (Assignment of Error 8).*

Rogers claims that the trial court erred at the sentencing hearing by "denying appellant's objection to the introduction of unadjudicated bad acts as they were immaterial and unreliable for the trial court to consider." "We review a court's decision to admit evidence at sentencing for an abuse of discretion." *Meekins v. Commonwealth*, 72 Va. App. 61, 68 (2020).

> Under longstanding practice, "both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist [the judge] in determining the kind and extent of punishment to be imposed within limits fixed by law."

*Harvey v. Commonwealth*, 65 Va. App. 280, 283-84 (2015) (quoting *McClain v. Commonwealth*, 189 Va. 847, 859-60 (1949)). *See also Williams v. New York*, 337 U.S. 241, 246 (1949).

Before the sentencing hearing, the Commonwealth gave notice of its intent to introduce various evidence of Rogers's prior unadjudicated bad acts. The notice identified the witnesses and what they would say, and it listed many documents to be introduced. At the sentencing hearing, the trial court said that it could not issue a "blanket ruling" on the admissibility of the prior-bad-acts evidence. The court directed defense counsel to raise objections as the evidence was introduced.

The Commonwealth called Angelone as its first witness. The court overruled Rogers's blanket objection that her testimony about his prior bad acts was inadmissible in a non-capital sentencing proceeding. The court found her testimony about Rogers's past misconduct and potential for future dangerousness relevant. The court needed to hear Angelone's testimony to judge her credibility and the reliability of the evidence. Despite being declared a hostile witness to the prosecution, Angelone proceeded to describe numerous acts of violence by Rogers. They included his punching her in the nose and preventing her from leaving the property, holding a

- 13 -

welding torch to her face and threatening to burn her if she made him look stupid again, calling her a "whore" and threatening her with a knife, prompting her daughter to call the police, restraining her for four hours against her will, asking which of her children she wanted to keep because he planned to kill one of them, bragging that he had done the same thing to another former girlfriend, telling her he would go on a shooting spree to kill people, including his mother, and choking Angelone in a bathroom. The record reflects no contemporaneous objection by Rogers's counsel to Angelone's testimony about any of those individual incidents.

Next, Molly Cane testified about two incidents involving Rogers when she was romantically involved with him. One time, he held a gun to her face. Another time, he grabbed her by the neck so hard that she had trouble breathing. Rogers then threatened her and her friend with an axe, forcing them to flee. Rogers's counsel did not object to Cane's testimony about those incidents.

The court also admitted various documents but sustained several objections to others. The court, for instance, admitted civil protective orders entered against Rogers, finding such evidence probative of his propensity for violence.

At the outset, we note that Rogers identifies no specific prior-bad-acts evidence admitted into evidence at the sentencing hearing that was immaterial or unreliable. By failing to identify which evidence he targets, he also fails to show whether he made a contemporaneous objection at the sentencing hearing. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."). As noted above, much of the evidence was introduced without objection.

Rogers has preserved for appeal only two blanket evidentiary objections to the admission of prior-bad-acts evidence at the sentencing hearing, but we find neither to be meritorious. First, he argues that evidence of "vileness and future dangerousness" is admissible only in a capital

- 14 -

sentencing proceeding, not during jury or judge sentencing in a non-capital case. But he

misplaces his reliance on *Commonwealth v. Shifflett*, 257 Va. 34 (1999). The Court there found

"*no sound reason* why the factors that may be considered by a jury in capital murder cases

should not likewise be available for consideration by a jury in noncapital cases." *Id.* at 43

(emphasis added). "Highly relevant—if not essential—to [the judge's] selection of an

appropriate sentence is the possession of the fullest information possible concerning the

defendant's life and characteristics." *Williams*, 337 U.S. at 247. "And modern concepts

individualizing punishment have made it all the more necessary that a sentencing judge not be

denied an opportunity to obtain pertinent information by a requirement of rigid adherence to

restrictive rules of evidence properly applicable to the trial." *Id.*[3] That is why "[h]earsay

testimony may be admissible in a sentencing hearing if it has 'some indicia of reliability.'"

*Meekins*, 72 Va. App. at 72 (quoting *Alger v. Commonwealth*, 19 Va. App. 252, 258 (1994)).

His second argument fares no better. Rogers claims that evidence of prior unadjudicated

criminal activity is admissible only in the prosecution's "rebuttal" case, not its case-in-chief. He

errs in relying on Code § 19.2-295.1. That statute governs the admission of evidence in the

penalty phase of a bifurcated jury trial. It permits prior-conviction evidence in the prosecution's

case-in-chief and "relevant, admissible evidence in rebuttal." Code § 19.2-295.1. By contrast,

Code § 19.2-295(A) imposes no such case-in-chief limitation during the sentencing phase of a

bench trial. Rogers's argument that such evidence is restricted to rebuttal also cannot be squared

with repeated statements by the Supreme Court of Virginia and our Court that evidence of

unadjudicated criminal conduct is admissible at sentencing if it bears indicia of reliability. *See*

---

[3] Rogers claims that the validity of *Williams* has been called into question. But *Williams* has not been overruled and "remains good law." *United States v. Umaña*, 750 F.3d 320, 346 (4th Cir. 2014).

*Beaver v. Commonwealth*, 232 Va. 521, 528-29 (1987); *Jenkins v. Commonwealth*, 71 Va. App. 334, 348-51 (2019); *Blunt v. Commonwealth*, 62 Va. App. 1, 11 (2013); *Wolfe v. Commonwealth*, 37 Va. App. 136, 142 (2001); *Moses v. Commonwealth*, 27 Va. App. 293, 302 (1998); *Harris v. Commonwealth*, 26 Va. App. 794, 808 (1998); *Thomas v. Commonwealth*, 18 Va. App. 656, 659 (1994) (en banc).

### F. The trial court did not err in departing from the sentencing guidelines (Assignment of Error 9).

The last assignment of error complains that the trial court "erred in sentencing [Rogers] to [six] active years of incarceration because the trial court made an improper upward departure from the sentencing guidelines." The statutory maximum term of imprisonment here would have been fifteen years: ten years for abduction (a Class 6 felony) and five years for the felon-in-possession conviction (a Class 5 felony). *See* Code § 18.2-10(e), (f). The sentencing guidelines recommended a prison sentence ranging from one year and nine months to five years and two months. The trial court sentenced Rogers to six years' active incarceration. The court justified that upward departure from the guidelines by explaining that Rogers has "a long history of unadjudicated violent acts, principally focused on domestic partners." The court found that Rogers "could or would not accept responsibility for any act and blamed his partners and alcohol consumption for his conduct." It troubled the court that Rogers showed no remorse.

Rogers acknowledges that we review the sentencing decision only for an abuse of discretion. Sentencing "decisions—if within the lawful boundaries of applicable sentencing statutes and constitutional limitations—are vested in the sound discretion of trial judges, not appellate judges." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016).

But Rogers fails to cite *Minh Duy Du* and ignores its teaching that, "once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed,

appellate review is at an end." *Id.* at 565 (quoting *Dorszynski v. United States*, 418 U.S. 424, 431 (1974)). That is because Virginia's "sentencing guidelines 'are discretionary, rather than mandatory.'" *Woodard v. Commonwealth*, 287 Va. 276, 281 (2014) (quoting *West v. Director, Dep't of Corr.*, 273 Va. 56, 65 (2007)); *see also* Code § 19.2-298.01(F) ("The failure to follow any or all of the provisions of this section or the failure to follow any or all of the provisions of this section in the prescribed manner shall not be reviewable on appeal . . . ."). So the guidelines "are not binding on the circuit court's determination of the appropriate sentence." *Woodard*, 287 Va. at 282. And "a circuit court's failure to follow the guidelines is 'not . . . reviewable on appeal.'" *Fazili v. Commonwealth*, 71 Va. App. 239, 248 (2019) (alteration in original) (quoting Code § 19.2-298.01(F)).

Rogers also argues on brief that his six-year active sentence violates the Eighth Amendment prohibition on cruel and unusual punishment because it is disproportionate to the crimes. That claim piggybacks on his assignment of error challenging the admission of his prior unadjudicated criminal conduct at sentencing. He argues, "Absent the impermissible introduction of the unadjudicated bad acts, nothing in the record would have supported an active incarceration period of [six] years."

Assuming for argument's sake that the Eighth Amendment claim has not been procedurally defaulted,[4] it fails on two independent grounds. First, we have already rejected its premise. As explained above, the trial court did not err in admitting the evidence of his prior unadjudicated criminal conduct at sentencing. Second, the claim fails as a matter of law because Eighth Amendment "proportionality review 'is not available for any sentence less than life

---

[4] An Eighth Amendment proportionality claim cannot be raised on appeal where, as in this case, it was not raised at trial. *See Hartless v. Commonwealth*, 29 Va. App. 172, 176 (1999); Rule 5A:18.

imprisonment without the possibility of parole.'" *Cole v. Commonwealth*, 58 Va. App. 642, 654 (2011) (quoting *United States v. Malloy*, 568 F.3d 166, 180 (4th Cir. 2009)).  We explained the "good reason" for that rule in *Cole*:  there is no clear way to make "any constitutional distinction" in terms of excessiveness from one prison term to another because that judgment is "invariably a subjective determination."  *Id.* (quoting *Hutto v. Davis*, 454 U.S. 370, 373 (1982) (*per curiam*)).

## CONCLUSION

Having scrutinized each of Rogers's nine assignments of error, we find no merit in any of them.

*Affirmed.*